**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

THE DREAM DEFENDERS; THE
BLACK COLLECTIVE, INC.;
CHAINLESS CHANGE, INC.;
BLACK LIVES MATTER
ALLIANCE BROWARD; FLORIDA
STATE CONFERENCE OF THE
NAACP; and NORTHSIDE
COALITION OF JACKSONVILLE,
INC.,

        Plaintiffs,

v.

RON DESANTIS, in his official
capacity as Governor of Florida;
ASHLEY MOODY, in her official
capacity as Attorney General of
Florida; and WALT MCNEIL, in his
official capacity as Sheriff of Leon
County, Florida; MIKE WILLIAMS,
in his official capacity as Sheriff of
Duval County, Florida; and
GREGORY TONY, in his official
capacity as Sheriff of Broward
County, Florida,

        Defendants.

_____/

Case No. 4:21-cv-00191-MW-MAF

**<u>GOVERNOR DESANTIS' MOTION TO DISMISS</u>**

Defendant Ron DeSantis, in his official capacity as Governor of Florida, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), files this Motion to Dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction, lack of standing, and failure to state a claim upon which relief can be granted. Attached is a memorandum of law explaining why this Court should dismiss the Complaint.

Dated: June 14, 2021                    Respectfully submitted,

**RON DESANTIS**
**GOVERNOR**

/s/ *Nicholas J.P. Meros*
JAMES W. UTHMEIER (FBN 113156)
*General Counsel*
NICHOLAS J.P. MEROS (FBN 120270)
*Deputy General Counsel*
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
James.Uthmeier@eog.myflorida.com
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com

*Counsel for Governor Ron DeSantis*

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on this 14th day of June, 2021.

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS
Deputy General Counsel

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

THE DREAM DEFENDERS; THE
BLACK COLLECTIVE, INC.;
CHAINLESS CHANGE, INC.;
BLACK LIVES MATTER
ALLIANCE BROWARD; FLORIDA
STATE CONFERENCE OF THE
NAACP; and NORTHSIDE
COALITION OF JACKSONVILLE,
INC.,

        Plaintiffs,

v.                                                          Case No. 4:21-cv-00191-MW-MAF

RON DESANTIS, in his official
capacity as Governor of Florida;
ASHLEY MOODY, in her official
capacity as Attorney General of
Florida; and WALT MCNEIL, in his
official capacity as Sheriff of Leon
County, Florida; MIKE WILLIAMS,
in his official capacity as Sheriff of
Duval County, Florida; and
GREGORY TONY, in his official
capacity as Sheriff of Broward
County, Florida,

        Defendants.

_____/

**MEMORANDUM OF LAW IN SUPPORT OF
GOVERNOR DESANTIS' MOTION TO DISMISS**

1

## INTRODUCTION

Following a year in which demonstrations across the country turned violent, Florida passed House Bill (CS/HB) 1, also referred to as the Anti-Riot Law ("Act"),[1] to protect against dangerous rioting and looting. Plaintiffs, The Dream Defenders, The Chainless Change, Inc., Black Lives Matter Alliance Broward, Florida State Conference of the NAACP, and Northside Coalition of Jacksonville, Inc., (collectively, "Plaintiffs"), ask this Court to enjoin enforcement of the Act based on unfounded, misleading, and conclusory allegations of "Constitutional violations." But the Act does none of the things Plaintiffs allege. Americans have a Constitutional right to free speech — they do not have a right to burn down buildings, destroy property, or inflict bodily harm on others.

First, Plaintiffs allege the Legislature passed the Act "to single out and punish Black organizers and those who lead protests seeking to end police violence against Black people." (Doc. 1, ¶ 5). In fact, Plaintiffs claim that it "silence[s] Black people and their allies who protest racial injustice." (Doc. 1, ¶ 3).[2] The Act's plain text, however, applies equally to every protest or

---

[1] HB 1 is a public record, which is subject to judicial notice. *See, e.g.*, *Smith v. Sec'y of Veterans Affairs*, 808 F. App'x 852, 853 (11th Cir. 2020) ("When ruling on a Rule 12(b)(6) motion to dismiss, the district court is permitted to take judicial notice of public records without needing to convert the motion into a motion for summary judgment[.]" (citing *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276-78 (11th Cir. 1999)).
[2] Docket entries in this proceeding appear as "Doc. __."

demonstration where participants choose to incite or cause violence, damage property, or intimidate others, regardless of why they are protesting. Indeed, the Act does not mention the protests themselves, or their motivations, because under the Act it does not matter who protests, or why, only that they do so peacefully.

Second, Plaintiffs argue that the Act is a content-based restriction favoring the government's "law and order" message because it prohibits speech typical of racial injustice protests, such as using "force or the threat of imminent force" to compel someone to adopt or reject a viewpoint against their will. (Doc. 1, ¶¶ 138, 149-50, & 152). Plaintiffs are wrong.

The Act does not prohibit or punish any protected speech, regardless of its content, and thus does not run afoul of the Constitution. The First Amendment does not protect one's use of force or threats to intimidate or harass. In addition, the Act's provisions do not support or disfavor any message or viewpoint. Instead, it simply amends existing criminal offenses to include, and increases the penalties for, instigating or participating in a riot or other violent demonstration. But prohibiting unlawful, violent behaviors does not promote law enforcement, just as failure to prohibit them does not endorse lawlessness and anarchy. Rather, the Act upholds the rule of law and protects public safety. And holding that either concept is a viewpoint means that all criminal statutes are content restrictions. This cannot be.

3

Third, Plaintiffs allege the Act "unconstitutionally targets and burdens fundamental speech activities" and thereby "discourage[es] would-be protesters from participating in a demonstration." (Doc. 1, ¶¶ 1, 80, & 140). None of this is true. The Act does not discourage, much less prohibit, any person from peacefully assembling, demonstrating, or speaking on any issue. The Act does not even apply to peaceful demonstrations or forms of expression. Rather, it outlaws people coming together, regardless of their motivation, to commit violence, damage property, or intimidate others into assuming or abandoning a viewpoint against their will. Prohibiting violence and destruction does not restrict Constitutionally-protected expression – only dangerous, unlawful behavior.

Fourth, Plaintiffs argue that the Act "permits the arrest, detention, and prosecution of protestors who are not engaged in criminal conduct, but rather who simply participate in certain protests." (Doc. 1, ¶¶ 3 & 12). As such, they allegedly "fear[ ] that their members risk criminal liability merely for speaking out and advocating for change." (Doc. 1, ¶ 2).

Here, Plaintiffs offer mere conclusions without a scintilla of supporting evidence. Again, the Act is clear that its provisions only prohibit, and thereby attach liability to, persons that cause or incite violence, destroy property, or intimidate others. Its provisions explicitly "do[ ] not prohibit constitutionally protected activity[,] such as a peaceful protest." Fla. Stat. § 870.01.

Accordingly, persons exercising their Constitutional rights without also doing these illegal things face no criminal or civil liability, regardless of their viewpoints. Moreover, the Act does not create new crimes. Instead, it codifies the common law elements for multiple, existing offenses and increases penalties for defined crimes to deter violent demonstrations and protect property.

Fifth, Plaintiffs insist that the Act's cyberintimidation provision "runs a substantial risk of punishing mere advocacy . . . [by] criminaliz[ing] political speech, or speech involving other matters of public concern, that is critical of law enforcement officials and other public officials." (Doc. 1, ¶¶ 88, 155, & 159). Again, Plaintiffs are clearly wrong.

This provision does not prohibit advocacy or other protected speech. And it certainly does not apply only to speech critical of law enforcement or other public officials. Instead, it forbids releasing information intended to harass or threaten another person. Specifically, it prohibits disseminating personal information – ***not*** simply that of public officials:

> "***with the intent to, or with the intent that a third party will use the information to***: (a) incite violence or commit a crime against the person; or (b) [t]hreaten or harass the person, placing such person in reasonable fear of bodily harm."

Fla. CS/HB 1, § 14 (proposed Fla. Stat. § 836.115(2)) (emphasis added). Doing so is clearly not mere advocacy or political speech, but harassment and intimidation. The First Amendment protects neither.

Finally, Plaintiffs argue the Act "allows those who intentionally injure or kill protestors to escape civil liability for their conduct," and thereby "invites violence against protestors and others engaged in protected speech activity . . . ." (Doc. 1, ¶¶ 3 & 91). This claim is inflammatory and demonstrably false. Nothing in the Act allows people to intentionally injure or kill demonstrators, nor does it provide blanket criminal or civil immunity to anyone. Rather, it creates an *affirmative defense* for defendants sued for damages sustained while the plaintiff incited or participated in a riot. Drivers confronted by an angry mob need not sit idly by while the rioters obstruct traffic, damage their vehicle, and threaten their safety, or worse. This provision allows those caught in violent or life-threatening situations to protect themselves and their property – not to attack protestors with impunity.

Nonetheless, despite the Act's plain language and clear Constitutional protections, Plaintiffs filed this action alleging it is unconstitutional on its face because it violates the First and Fourteenth Amendments to the U.S. Constitution.

This Court, however, does not have subject matter jurisdiction over the claims against Governor DeSantis because he is not a proper party. Likewise,

Plaintiffs do not have standing to bring the action. But even if the Court had jurisdiction, and even accepting their baseless allegations as true, Plaintiffs still fail to state a claim upon which relief can be granted. Accordingly, this Court should dismiss the Amended Complaint.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) requires federal courts to dismiss a complaint if it does not establish "a basis of subject matter jurisdiction." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).[3] Further, to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Although the Court must accept well-pleaded facts as true and construe them in the light most favorable to Plaintiffs, "a plaintiff's obligation to provide 'the grounds' of his 'entitle[ment] to relief' requires more than mere labels or conclusions, and a formulaic recitation of the elements of

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted all decisions of the Fifth Circuit decided before September 31, 1981.

a cause of action will not do . . . ." *Twombly*, 550 U.S. at 555. Pleadings that are "no more than conclusions[] are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

Plaintiffs bring this pre-enforcement challenge to HB 1 against Governor DeSantis in his official capacity and ask this Court to enjoin him from enforcing the Act. This Court, however, must dismiss Plaintiffs' claims because (1) Governor DeSantis is not a proper party, (2) Plaintiffs do not have standing, and (3) Plaintiffs' claims fail to state a claim upon which relief can be granted.

**I.      THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE GOVERNOR DESANTIS IS NOT A PROPER PARTY.**

Under the Eleventh Amendment, "a state may not be sued in federal court unless it waives its sovereign immunity or its immunity is abrogated by an act of Congress under section 5 of the Fourteenth Amendment." *Osterback v. Scott*, 782 F. App'x 856, 858 (11th Cir. 2019) (quoting *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011)) (internal quotation marks omitted). Neither has occurred. The State of Florida has not waived its sovereign immunity, *see Gamble v. Fla. Dep't of Health & Rehab. Servs.,* 779 F.2d 1509, 1513-20 (11th Cir. 1986), and Congress has not abrogated state sovereign immunity. *See Qill. V. Mich. Dep't of State Police*, 491 U.S. 58, 68-71 (1989). Plaintiffs fail to allege otherwise.

8

Further, although *Ex parte Young*, 209 U.S. 123 (1908), provides a narrow exception to state sovereign immunity for suits "alleging a violation of the federal constitution against a state official in his official capacity for injunctive relief on a prospective basis," *Osterback*, 782 F. App'x at 858 (quoting *Grizzle*, 634 F.3d at 1319), Plaintiffs may not simply "challenge a state law by choosing whichever state official appears most convenient and haling them into federal court." *Support Working Animals, Inc. v. DeSantis*, 457 F. Supp. 3d 1193, 1208 (N.D. Fla. 2020). Instead, litigants must bring their claims "against the state official or agency responsible for enforcing the allegedly unconstitutional scheme." *Osterback*, 782 F. App'x at 858-59 (internal quotation marks omitted) (quoting *ACLU v. Fla. Bar*, 999 F.2d 1486, 1490 (11th Cir. 1993)); *see also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1248 (11th Cir. 1998) ("[W]here the plaintiff seeks a declaration of the unconstitutionality of a state statute and an injunction against its enforcement, a state officer, in order to be an appropriate defendant, must, at a minimum, have some connection with enforcement of the provision at issue.") This is because "[w]here the named defendant lacks any responsibility to enforce the statute at issue, the state is, in fact, the real party in interest, and the suit remains prohibited by the Eleventh Amendment." *Osterback*, 782 F. App'x at 858-59 (internal quotation marks omitted) (quoting *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999)).

Accordingly, "[u]nless the state officer has some responsibility to enforce the statute or provision at issue, the 'fiction' of *Ex parte Young* cannot operate." *Support Working Animals*, 457 F. Supp. 3d at 1208 (internal quotation marks omitted) (quoting *Summit Med. Assocs.*, 180 F.3d at 1341); *see also Curling v. Sec'y of Georgia*, 761 F. App'x 927, 932 n.3 (11th Cir. 2019) (holding that defendants must directly enforce or administer the challenged state statute for the *Ex parte Young* "legal fiction" to apply).

Governor DeSantis' status and authority as Governor of Florida do not, as a matter of law, make him a proper party to this case. Plaintiffs allege that Governor DeSantis is responsible for enforcing the Act because, pursuant to Art. IV, § 1(a), he "is the Florida constitutional officer vested with 'supreme executive power' who must 'take care' that the laws be faithfully executed." (Doc. 1, ¶ 36). They also note generally that Art. IV, §1(d) vests the Governor with the "power to call out the militia to preserve the public peace, execute the laws of the state, suppress insurrection, or repel invasion." (Doc. 1, ¶ 36). Neither are sufficient.

The Eleventh Circuit has made clear that the Governor's general executive authority to enforce state laws and oversee the executive branch, standing alone, "is insufficient to make him the proper party whenever a plaintiff seeks to challenge the constitutionality of a law." *Harris v. Bush,* 106 F. Supp. 2d 1272, 1276 (N.D. Fla. 2000) (collecting multiple cases supporting

this principle); *see also Women's Emergency Network v. Bush*, 323 F.3d 937, 949 (11th Cir. 2003) ("A governor's 'general executive power' is not a basis for jurisdiction in most circumstances."); *Osterback*, 782 F. App'x at 859 ("[T]he Governor's constitutional and statutory authority to enforce the law and oversee the executive branch do not make him a proper defendant under *Ex Parte Young*.") Similarly, the Governor's enactment authority, by itself, does not subject him to this Court's jurisdiction because "[u]nder the doctrine of absolute legislative immunity, a governor cannot be sued for signing a bill into law." *Women's Emergency Network*, 323 F.3d at 950 (citing *Supreme Ct. of Va. v. Consumers Union of United States, Inc.,* 446 U.S. 719, 731–34 (1980)). Otherwise, the Governor would be a proper defendant in any challenge to a state statute. *Women's Emergency Network*, 323 F.3d at 949 (citing *Harris*, 106 F. Supp. 2d at 1277) ("If a governor's general executive power provided a sufficient connection to a state law to permit jurisdiction over him, any state statute could be challenged simply by naming the governor as a defendant.").

Because neither the Act's text nor his general executive authority "sufficiently connect[s] him with the . . . enforcement" of its provisions to "make him a proper party," *Ex parte Young*, 209 U.S. at 161, Governor DeSantis does not fall under the *Ex parte Young* exception and is therefore immune from suit under the Eleventh Amendment. Accordingly, the claims against him should be dismissed.

## II.     PLAINTIFFS DO NOT HAVE STANDING

Governor DeSantis adopts and incorporates Attorney General Moody's arguments on Plaintiffs' standing as set forth in her Motion to Dismiss and Incorporated Memorandum of Law.

## III.    THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

Governor DeSantis adopts and incorporates Attorney General Moody's arguments on the merits of Plaintiffs' claims as set forth in her Motion to Dismiss and Incorporated Memorandum of Law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Amended Complaint because (1) Governor DeSantis is not a proper party, (2) Plaintiffs do not have standing to bring their claims, and (3) Plaintiffs' claims fail to state a claim upon which relief can be granted.

Dated: June 14, 2021                  Respectfully submitted,

**RON DESANTIS**
**GOVERNOR**

/s/ *Nicholas J.P. Meros*
JAMES W. UTHMEIER (FBN 113156)
*General Counsel*
NICHOLAS J.P. MEROS (FBN 120270)
*Deputy General Counsel*
EXECUTIVE OFFICE OF THE GOVERNOR
The Capitol, PL-5
400 S. Monroe Street
Tallahassee, FL 32399
Phone: (850) 717-9310
Facsimile: (850) 488-9810
James.Uthmeier@eog.myflorida.com
Nicholas.Meros@eog.myflorida.com
Gov.legal@eog.myflorida.com

*Counsel for Governor Ron DeSantis*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)</u>

This document contains 2,509 words, exclusive of the case style, signature block, and certificate of service.

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS
Deputy General Counsel

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the Court's CM/ECF system, which provides notice to all parties, on this 14th day of June, 2021.

/s/ *Nicholas J.P. Meros*
NICHOLAS J.P. MEROS
Deputy General Counsel