**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

THE DREAM DEFENDERS; THE
BLACK COLLECTIVE, INC., et al.

      Plaintiffs,

v.                                   Case No.: 4:21-CV-191

RON DESANTIS, in his official capacity as
Governor of the State of Florida, et al.,

      Defendants.

_____/

**ATTORNEY GENERAL'S RESPONSE TO
PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

Pursuant to Local Rule 7.1 and this court's order (ECF 86) Defendant, the

Attorney General of Florida, files this Response to Plaintiffs' Supplemental Brief in

Opposition to Defendants' Motions to Dismiss. ECF 76.

**I.**     **Plaintiffs' new argument that they have standing under *Reproductive
Health Services v. Strange* is unavailing.  The decision is inapposite.**

In *Strange*, the plaintiffs sued the Alabama Attorney General and a district

attorney, challenging Alabama's Parental Consent Act, which requires parental

consent for a minor's abortion or alternatively a "judicial order authorizing the

procedure." *Reproductive Health Servs. v. Strange*, No. 17-13561, 2021 WL

2678574, at *1 (11th Cir. June 30, 2021).  The Eleventh Circuit held (1) that the

plaintiffs established traceability because "[t]he Act contemplates enforcement by the Attorney General and the District Attorney through its criminal-sanctions provision," and (2) that the plaintiffs established redressability because it was "likely as a practical matter" that Alabama judges, who have a role in the bypass procedure, would follow a federal decree even though they were not parties to the suit. *Id.* at *6–7.[1] In reaching the latter ruling, the court distinguished *Jacobson* because there, the relevant non-parties were not state court judges.

This case is plainly distinguishable from *Strange*—indeed, it is *Jacobson* redux. First, the provisions of HB 1 do not contemplate enforcement by the Attorney General, just as the challenged provision in *Jacobson* did not contemplate enforcement by the Secretary of State. Second, like in *Jacobson*, the relevant non-parties are locally elected constitutional officers—State Attorneys—not state court judges.

Even so, Plaintiffs stake their standing on *Strange*, raising a variety of arguments based on the decision. All of them are without merit.

First, Plaintiffs allege that under *Strange*, the Attorney General has enforcement authority over HB 1 because of her general superintendence and direction over State Attorneys. As previously discussed in Defendants' Motion to

---

[1] On July 1, 2021 an Order was entered in *Strange* withholding issuance of the mandate.

Dismiss (ECF 38 at 6) and Reply (ECF 84 at 4), this is incorrect due to the discretion and independence afforded to State Attorneys under Florida law. *See* Fla. Const. Art. 5, § 17. State Attorneys are free to prosecute as they wish regardless of any general direction provided by the Attorney General.

Second, Plaintiffs contend that standing is even more obvious here because unlike in *Strange*, they directly challenge criminal statutes. This argument is also without merit. No court has determined that the Attorney General is a proper defendant in a facial challenge to a Florida criminal statute because of her general superintendence. *Accord Nat'l Rifle Ass'n v. Swearingen*, 2020 WL 5646480, at *3 (N.D. Fla. May 1, 2020) (Walker, J.) (dismissing Attorney General based on sovereign immunity from suit challenging a Florida criminal statute).

Third, Plaintiffs argue that under *Strange*, there is redressability because State Attorneys "as a practical matter" would abide by this court's "authoritative interpretation" of the law at issue. But as explained above, in *Strange* the independent third parties at issue were unique—they were state court judges "who routinely follow federal decree[s] that do not bind them directly." 2021 WL 2678574, at 7 (quotations omitted). The court therefore concluded that it was substantially likely that a federal decree in the case would have a persuasive effect

on Alabama judges involved in the bypass process. *See id.* That conclusion has no bearing here since state court judges are not at issue.[2]

Indeed, Plaintiffs have made no showing—that is, they have made no allegations in their Complaint—that as a practical matter Florida's 20 State Attorneys would abide by an injunction against the Attorney General that does not bind them. Rather, their theory in their Complaint is that if this Court issued an affirmative injunction against the Attorney General instructing her to provide general directives on HB 1 to State Attorneys, State Attorneys across Florida would decide to adhere to the directives rather than exercise their constitutional authority and enforce HB 1. That is not a viable theory of traceability or redressability. *See Jacobson*, 974 F.3d at 1253–54.

## II. Plaintiffs' proposition that the Attorney General is not immune under *Strange* is without merit.

Plaintiffs argue that under *Strange*, the Attorney General's enforcement authority of HB 1 provides a sufficient connection under *Ex Parte Young*. However,

---

[2] The conclusion is also in conflict with *Jacobson*, which rejected the argument that redressability can be based on the "persuasive effect" of a federal decree. *Jacobson*, 974 F.3d at 1254–55 ("Any persuasive effect a judicial order might have upon the Supervisors, as absent nonparties who are not under the Secretary's control, cannot suffice to establish redressability"). So even if this court were to find *Strange* relevant to this case, *Jacobson* would nevertheless control under the Eleventh Circuit's prior-panel-precedent rule. *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015).

as discussed above and in prior briefings (ECF 38 and 81), the Attorney General does not have the requisite enforcement authority.

### III. Plaintiffs' alleged harms are not linked to the Attorney General.

Plaintiffs argue that their harm is more closely linked to the Attorney General's enforcement authority in comparison to *Support Working Animals II*. All of their arguments fail because the Attorney General does not have enforcement authority.

First, Plaintiffs allege that unlike in *Support Working Animals*, here there is no need to "speculate" as to the penalties the legislature might promulgate. ECF 85 at 6-7. However, the "speculation" addressed by this Court was not as to the criminal penalty itself, it was about the nature and manner of future enforcement by the Attorney General. *Support Working Animals II*, at *3. The court found that this "speculation" was insufficient to confer standing. Here, there is no need to speculate because the criminal penalties and the persons responsible for the enforcement are known–and they do not include the Attorney General.

Second, Plaintiffs allege for the first time that the Attorney General has enforcement authority due to her position as a cabinet member. Specifically, they assert that she, the two other members of the cabinet, and the Governor constitute the head of the Florida Department of Law Enforcement (FDLE); that FDLE has enforcement authority; and that the Attorney General therefore has enforcement

authority.[3]  ECF 85 at 8; *see also* Fla. Const. Art 4 § 4(a),(g); Fla. Stat. § 20.201. But as just one member of the four-person body that heads FDLE, the Attorney General does not have sufficient control over FDLE to establish traceability.  *See Women's Emergency Network*, 323 F.3d at 949 ("Governor Bush's only connection with [the law] is that he, along with six members of the cabinet, are responsible for the [agency]. Governor Bush's shared authority over the [agency] is simply too attenuated.").  Furthermore, by statute, FDLE has an Executive Director (often referred to as the "Commissioner") who is appointed by the Governor.  It is the duty of this director to "supervise, direct, coordinate and administer all activities of the department." Fla. Stat. § 943.03(1); *see also* Fla Stat. § 20.201(1) (authorizing the FDLE Executive Director to manage the agency's operating programs, among other duties).  As such, lawsuits challenging acts or omissions by FDLE are filed against the Director/Commissioner–the person with enforcement authority.  *See e.g. Delgado v. Swearingen*, 375 F. Supp. 3d 1251 (N.D. Fla. 2018); *McGroarty v. Swearingen*, 977 F.3d 1302 (11th Cir. 2020); *Nat'l Rifle Ass'n v. Swearingen*, 2020

---

[3] In support of this contention, Plaintiffs impermissibly introduce a new allegation of fact that is not included in the Complaint–that FDLE has been involved in policing at least one racial justice protest.  ECF 85 at 8. Accordingly, that allegation cannot be assumed to be true, nor even considered, for purposes of the pending motions to dismiss. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (review on motion to dismiss and limited to the four corners of the complaint).

WL 5646480 (N.D. Fla. May 1, 2020). The Attorney General's cabinet position is simply too attenuated to provide her with enforcement authority.

Third, Plaintiffs allege that unlike in *Support Working Animals*, HB 1 "explicitly contemplates" enforcement by the Attorney General because as a member of the Administration Commission,[4] she plays a role in the process for appeals of law enforcement budgets in Section 1. ECF 85 at 9-11. That argument fails for several reasons.

For starters, Plaintiffs do not even challenge Section 1 in their Complaint, so they cannot rely on it to establish Article III jurisdiction. Counts 1 through 4 of the Complaint do not specifically allege any facts or raise any claims regarding Section 1. Thus, Plaintiffs' Administration Commission arguments are not supported by the allegations in the Complaint and must be disregarded.

Next, even if Plaintiffs had challenged Section 1, they have failed to establish any injury related to it, making traceability and redressability irrelevant. Section 1 does not prohibit the reduction of a law enforcement budget; it merely provides a limited number of people the right to appeal that decision. Plaintiffs have made no showing as to why they cannot continue to advocate for increased funding for social services or how there is a "realistic danger of sustaining injury as a result of the

---

[4] The Administration Commission is one of the "hats" worn by the Governor and Cabinet. *See* Fla Stat. 14.202.

statute's operation or enforcement." *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1247 (11th Cir. 1998) (quotations omitted). The statute does not impose any requirements on Plaintiffs or their members. Rather, at best, Plaintiffs have a general grievance related to Section 1, which is insufficient to support standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573 (1992).

In an attempt to rectify their pleading failures, Plaintiffs improperly attempt to allege new facts in their Supplemental Brief. They allege that their speech has been chilled because of "logistical hurdles to proposals to reduce law enforcement budgets." ECF 85 at 10. But they do not explain what those logistical hurdles are or how the purported hurdles injure them. Plaintiffs also newly allege that Section 1 frustrates their missions. ECF 85 at 10. While Plaintiffs list several citations to the Complaint in support of this argument, none of the citations are to allegations of how providing an Administration Commission appeals process hurts their missions. There also are no allegations that any Florida municipality has been subjected to action by the Administration Commission through Section 1.

Finally, even if Plaintiffs had raised a claim challenging Section 1, and even if they had a cognizable injury, the Attorney General's mere membership on the Commission is insufficient to establish traceability or redressability. She is just one of four members on the Commission. *See* Fla. Stat. § 14.202. Nor do the arguments raised in Plaintiffs' Supplemental Brief based on the Attorney General being a

member of the Florida Cabinet or the Administration Commission have any bearing on whether she is a properly named party. That brief is not a pleading, as defined in Fed. R. Civ. P. Rule 7(a), and cannot supplement the Complaint's allegations.

## CONCLUSION

Based on the arguments made above and in Defendants' Motion to Dismiss (ECF 38) and Reply (ECF 81), the Complaint should be dismissed against the Attorney General and in its entirety. Alternatively, Plaintiffs should be required to file an amended complaint that complies with the pleading requirements in the Federal Rules of Civil Procedure. And because HB 1 is codified and in legal effect, references to disputed sections of HB 1 should be to specific statutes, not bill sections.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

I hereby certify that this Response contains 1,930 words.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ *Anita J. Patel*
Anita J. Patel (FBN 0070214)
Senior Assistant Attorney General
Anita.Patel@myfloridalegal.com
ComplexLitigation.eservice@myfloridalegal.com

Karen Brodeen (FBN 512771)
Special Counsel
Karen.Brodeen@myfloridalegal.com

Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
850-414-3300

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of August, 2021 a copy of this document was filed electronically through the CM/ECF system and furnished by email to all counsel of record.

/s/ *Anita J. Patel*
Anita J. Patel