## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

|  |  |
|---|---|
| THE DREAM DEFENDERS, THE BLACK COLLECTIVE, *et al*., | Case No.: 4:21-cv-191 |
| Plaintiffs, | |
| v. | |
| RON DESANTIS, *et al*. | |
| Defendants. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION OR, ALTERNATIVELY, FOR FURTHER RELIEF

Plaintiffs submit this reply to Defendants' responses, ECF 96, 98, 99, to Plaintiffs' motion for preliminary injunction, ECF 64.

## I.

**A.    Because Defendants insist that, despite its language, Section 15 codifies the common law definition of "riot," Section 15 can easily be enjoined to return Florida to the common law standard.**

Governor DeSantis and Sheriff Williams—the only Defendants to offer a substantive defense of Section 15—both argue that Section 15 merely codified the common law definition of "riot" set forth in *State v. Beasley*, 317 So. 2d 750, 753 (Fla. 1975). *See* ECF 99 at 16 ("[S]ection 870.01(2)'s definition of "riot" mirrors the common law definition."); ECF 98 at 6 ("[T]he definition included in Section 15 merely codifies Florida's long-standing common-law definition of "riot."). Moreover, both claim that Section 15 cannot possibly be read

1

to encompass anything more than willful participation in violence. *See* ECF 99 at 15; ECF 98 at 7.

While Plaintiffs still argue that this interpretation of Section 15 is neither what the legislature intended nor the most plausible reading of the language, as explained in Plaintiffs' opening brief. *See* ECF 65 (Pls.' Mem. in Supt. of Mot. for Prelim. Inj.), nevertheless, these two Defendants concede that they will not interpret Section 15 more broadly than the common law definition of riot. Thus, the balance of equities clearly favors issuing a preliminary injunction to enjoin enforcement of Section 15 beyond what is already prohibited by the common law since Defendants themselves have adopted that understanding in this litigation. Moreover, such preliminary injunction is necessary to judicially enforce Defendants' concession and prevent the substantial risk of enforcement of Section 15 that would run afoul of the United States Constitution due to the significant ambiguities in the statute's language.

Since Section 15 expands the scope of "riot" beyond the common law definition, as described below, the preliminary injunction would prevent the irreparable harm to Plaintiffs from self-censorship and chilled speech by resolving the ambiguities that exist with Section 15 as currently written. Moreover, entering the preliminary injunction plainly would not harm Defendants and would be in the

public interest, as it merely would bring into effect Defendants' interpretation by returning to the ex ante status of the common law.

## II.

Although the concessions by the Governor and Sheriff Williams make clear that a preliminary injunction is warranted to prevent enforcement of Section 15 beyond the common law definition of "riot," this Court must also preliminarily enjoin Section 15 because it is unconstitutional for the reasons set forth in Plaintiffs' opening brief and for the additional reasons below.

### A.    Plaintiffs' claims are not premature and abstention is not appropriate.

As an initial matter, this Court has already rejected Governor DeSantis's argument that Plaintiffs' claims are premature and that Plaintiffs have not demonstrated an injury. ECF 90 at 21 ("While Defendants argue both that Plaintiffs are not injured and that this case is not ripe because there is no credible threat of enforcement, . . . Plaintiffs sufficiently allege a credible threat of enforcement to establish both injury and ripeness."). Plaintiffs also have submitted seven declarations attesting to the chilling effect of HB1, *see* ECF 65-1, 65-2, 65-3, 65-4, 65-5, 65-6, 65-7, and "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" justifying injunctive relief, *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1271–72 (11th Cir. 2006) (quotations omitted).

Moreover, Governor DeSantis's argument that this Court should abstain from construing Section 15 and delay Plaintiffs' relief to allow state courts to interpret it, ECF 99 at 4–6, is without merit. To "abstain pending authoritative interpretation of [a statute] in the state courts" is "inappropriate for cases such as the present one where . . . [the] statute [is] justifiably attacked on [its] face as abridging free expression . . . ." *Dombrowski v. Pfister*, 380 U.S. 479, 489–90 (1965); *City of Houston, Tex. v. Hill*, 482 U.S. 451, 467 (1987) ("Abstention is, of course, the exception and not the rule, and we have been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment."); *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 489 n.6 (11th Cir. 1996).

To challenge this binding precedent, Governor DeSantis invokes ten cases, only three of which are First Amendment cases and none of which support his position. ECF 99 at 4–6. One of those three, *Fox v. Washington*, 236 U.S. 273, 277 (1915), is a *cf.* cite to a decision from 1915 concerning constitutional avoidance where a state court had already ruled. The other two, *Temple B'Nai Zion, Inc. v. City of Sunny Isles Beach, Fla.*, 727 F.3d 1349, 1357 (11th Cir. 2013), and *Zwickler v. Koota*, 389 U.S. 241, 252 (1967), weaken Governor DeSantis' argument. In *Temple*, the Court found plaintiffs' claims *were* ripe for adjudication, and declared that "[i]n the First Amendment context, our ripeness review is at its most charitable, and should any significant doubt prevail, *we will resolve it in favor*

4

*of justiciability*." 727 F.3d at 1357 (emphasis added). In *Zwickler*, the Court held that its principle against abstention has "particular significance when, as in this case, the attack upon the statute on its face is for repugnancy to the First Amendment." 389 U.S. at 252; *see also Hill*, 482 U.S. at 470 ("The possibility of certification does not change our analysis."). "[T]o force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Zwickler*, 389 U.S. at 252.

Accordingly, it is appropriate for this Court to construe Section 15 to determine its vagueness and overbreadth.

### B.   Plaintiffs are likely to succeed on the merits.

#### 1.   The most plausible reading of Section 15 is that it obscures and expands the common law definition of riot.[1]

The Governor and Sheriff Williams's argument that Section 15 codifies the common law definition of "riot" is highly unlikely.[2] ECF 99 at 16; ECF 98 at 6. To

---

[1] Although Defendants contend that Section 15 codifies common law "riot," a defendant's private interpretation does not generally create law, and Plaintiffs would instead require a judicially enforceable way to rely on this interpretation. *See* ECF 65 at 31.

[2] Sheriff Williams notes that the Florida Supreme Court in *State v. Beasley*, 317 So. 2d 750 (Fla. 1975) stated that the legislature could always draft a "riot" definition that was "more encompassing" than the common law definition. ECF 98 at 6 (citing *Beasley*, 317 So. 2d at 753). Given Section 15's expansive and vague text, it is highly likely that the legislature indeed opted to follow the "more

refresh, below are the common law definition of "riot" alongside the updated definition provided in Section 15:

| **Common Law** (*Beasley*, 317 So. 2d at 752) | **Section 15** (Fla. Stat. § 870.01(2)) |
|---|---|
| "[A] tumultuous disturbance of the peace by three or more persons, assembled and acting with a common intent, either in executing a lawful private enterprise in a violent and turbulent manner, to the terror of the people, or in executing an unlawful enterprise in a violent and turbulent manner." | "A person commits a riot if he or she willfully participates in a violent public disturbance involving an assembly of three or more persons, acting with a common intent to assist each other in violent and disorderly conduct, resulting in: (a) Injury to another person; (b) Damage to property; or (c) Imminent danger of injury to another person or damage to property." |

Section 15 has distinct meaning from the common law definition given its distinct syntax and sentence structure. The common law definition limits who can be arrested for "riot" to "three or more persons, assembled and acting with a common intent" to engage in violence. *Beasley*, 317 So. 2d at 752. By contrast, Section 15 fails to clarify what constitutes "willful participation" in the context of a "violent public disturbance," or who must share a "common intent to assist each other" in violence in order to be arrested. *See* ECF 65 at 19–24.

Given the substantive changes made to the common law definition of "riot" by the Florida legislature, the most reasonable reading of Section 15 is not that it

encompassing" route rather than codify the common law "riot." *See infra* accompanying text.

was intended to mirror the common law definition of "riot" but that it was intended to expand it. Nothing in any of Defendants' oppositions changes that.

## 2. Section 15 is void-for-vagueness.

Plaintiffs have demonstrated that Section 15 is void-for-vagueness. In response, Governor DeSantis argues that Section 15 must be vague in *all* its applications for the doctrine to apply. ECF 99 at 8. But a law may be void-for-vagueness even when it is not vague in all its applications. *Johnson v. United States*, 576 U.S. 591, 603 (2015) ("[O]ur holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp."); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 n.3 (2018) (affirming *Johnson*); *United States v. Davis*, 139 S. Ct. 2319, 2325–26 (2019) (same).

Furthermore, the Governor misstates Plaintiffs' position, arguing that Plaintiffs allege Section 15 is vague merely because it is "imprecise." ECF 99 at 11. To be clear, Section 15 is vague because it fails to provide reasonable notice of what it prohibits to people of ordinary intelligence, and encourages arbitrary and discriminatory enforcement by police. *See Wollschlaeger v. Governor, Florida*, 848 F.3d 1293, 1319–20 (11th Cir. 2017) (en banc); ECF 65 at 15–32.

**a.    Persons of ordinary intelligence have no reasonable notice of what Section 15 criminalizes.**

Because Section 15 provides no reasonable notice as to what conduct it prohibits, Plaintiffs must guess both as to when their conduct constitutes "willful participation" and when a peaceful demonstration crosses the line into a "violent public disturbance" (such that their presence in a peaceful demonstration has suddenly become "willful participation" in a "violent public disturbance"). They are forced to either refrain from exercising their First Amendment rights or risk being arrested. This is precisely the type of chilling effect on First Amendment rights that renders statutes unconstitutional.

The Governor argues that people of ordinary intelligence will have reasonable notice of what Section 15 means, not because Section 15 is clear, but because *Webster's Dictionary* provides "a common meaning that will inform an ordinary person's reading." ECF 99 at 8. That the Governor must revert to Webster's Dictionary in order to explain the legislature's definition of riot establishes on its own that the statute's meaning is not reasonably clear to an ordinary reader.

**b.    Section 15 encourages arbitrary and discriminatory enforcement by police.**

The Governor asserts that Section 15 defines what conduct is prohibited and the potential range of punishments. ECF 99 at 17. He further argues that the

legislature's failure to define "willfully participates" is irrelevant because the court can give those words their plain and ordinary meaning.[3] *Id.* at 14. The Governor is wrong. Because the law sets no clear limit on what may constitute a "violent public disturbance," and only indicates that such a disturbance "*involves*" an assembly of three or more persons engaged in violence, what it means to "willfully participate" in that context is vague and can be construed by police to involve any number of non-violent actors alongside a violent assembly. *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 685 (1968) ("Vague standards, unless narrowed by interpretation, encourage erratic administration [by police]; 'individual impressions become the yardstick of action, and result in regulation in accordance with the beliefs of the individual [] rather than regulation by law); *Johnson v. United States*, 559 U.S. 133, 139 (2010) ("Ultimately, context determines meaning."). Section 15 thus unconstitutionally delegates lawmaking authority to police, who themselves must determine what constitutes "willful participation" in the context of a "violent public disturbance."

---

[3] Sheriff Williams makes the same argument but adds that the words "violent public disturbance" also have plain ordinary meanings. ECF 98 at 10. This does nothing to alter the analysis in this subsection because the vagueness described arises out of the context of these words, not their plain ordinary meaning.

### 3.   Section 15 is overbroad.

Section 15 is also unconstitutionally overbroad because it can be reasonably understood to criminalize a substantial amount of First Amendment protected activity. As an initial matter, the Governor's argument that the Supreme Court only recognizes the validity of facial overbreadth attacks in limited settings is without merit. ECF 99 at 20. The Court has repeatedly invalidated overbroad laws that chill fundamental freedoms within the First Amendment's "vast and privileged sphere," *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002); *see also* ECF 65 at 25, and "this case provides a textbook example of why we permit facial challenges to statutes that burden expression." *Ashcroft*, 535 U.S. at 244.

### a.   "Common intent to assist each other" can reasonably be read as only modifying "an assembly of three or more persons" regardless of the last antecedent rule.

The Governor and Sheriff Williams both argue that the last antecedent rule is inapplicable to Section 15. The Governor further argues that even if it were applicable, the rule could be overcome by other indicia of meaning, including the context of the statute and its internal logic. ECF 90 at 12, 14. Sheriff Williams argues that the punctuation canon cancels the last-antecedent rule.  ECF 98 at 6–11.

First and foremost, "canons are not mandatory rules. They are guides that need not be conclusive." *Chickasaw Nation v. United States,* 534 U.S. 84, 94 (2001). Canons are only helpful insofar as they "help judges determine the

Legislature's intent as embodied in particular statutory language. And other circumstances evidencing congressional intent can overcome their force." *Id.* Although the Governor is correct that the legislature's intent can be shown through other indicia of meaning, not just Section 15's text, he is wrong to assume that these indicia support his defense. Rather, as discussed in Plaintiffs' opening brief (*see* ECF 65 at 26), the plain language of Section 15, its legislative history, and the specific context of its enactment make it clear that the Florida legislature intended to deviate from the common law definition of "riot" when it passed Section 15 to amend Section 870.01 of the Florida Statutes.[4]  *See* ECF 65 at 7–11; *Miccosukee Tribe of Indians of Fla. v. United States*, No. 04-21448-CIV, 2008 U.S. Dist. LEXIS 57809, at *71 (S.D. Fla. July 29, 2008) ("[W]hen the legislature amends a statute, it is presumed that the legislature intends to change the law.").

The internal logic of Section 15 further supports the conclusion that "acting with a common intent to assist each other in violent disorderly conduct" only modifies an "assembly of three or more persons." Indeed, the logic would be strange if the former phrase modified both the "assembly" *and* the "person." In that

---

[4]The Governor argues that statements of the legislature are irrelevant because courts may not delve into legislative history. ECF 99 at 22. He is mistaken. "[T]he plain-meaning rule is rather an axiom of experience than a rule of law, and does not preclude consideration of persuasive evidence if it exists." *Watt v. Alaska*, 451 U.S. 259, 266 (1981) (cleaned up). Moreover, the Governor's assertion contradicts his own argument that courts *may* consider other indicia of meaning. ECF 99 at 12.

scenario, it would require that the assembly shares a specific intent to assist one particular person.

As to Sheriff Williams' argument, the punctuation canon does not cancel the close cousin to the last-antecedent rule: the nearest-reasonable-referent canon. *See* SCALIA & GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXT, 152–53 (2012) (noting that courts oftentimes apply the nearest-reasonable-referent canon under the misnomer of last-antecedent rule). The nearest-reasonable-referent canon provides that "[w]hen the syntax involves something other than a parallel series of nouns or verbs, a [modifier located before or after that syntax] modifier normally applies to only the nearest reasonable referent." *Id.*; *Parm v. Nat'l Bank of Cal., Nat'l Ass'n*, 835 F.3d 1331, 1336 (11th Cir. 2016) (applying the nearest-reasonable-referent canon).

Here, the postpositive modifier at issue in Section 15 ("acting with a common intent to assist each other in violent and disorderly conduct") does not follow a parallel series of nouns or verbs, but is rather preceded by a participial phrase ("involving an assembly of three or more persons") that itself modifies a prior phrase ("a violent public disturbance"). Application of the nearest-reasonable-referent canon dictates that Section 15's modifier phrase applies only to the nearest phrase: "an assembly of three or more persons." *See* SCALIA & GARNER at 153.

Nothing within the structure of Section 15's text supports Sheriff Williams's interpretation that "acting with common intent" reaches all the way back to the "person" referenced at the beginning of the statute. As Section 15 is written, "three or more persons" and "person" are not in a parallel structure and cannot be modified by a single modifier.[5]

### b.  The Governor's alternative arguments fail.

The Governor argues that even if "common intent" only applied to the "assembly," the definition would nevertheless require the "person" to then join that assembly. ECF 99 at 13. But nowhere does Section 15 mandate that the "person," whom the legislature intentionally introduced *outside* the "assembly," would later join the assembly. The Governor cannot inscribe more words onto the legislature's enactment to make it say what he would like for this litigation, nor can he ask this Court to do so. *See* ECF 5 at 31 (citing *Brayshaw v. City of Tallahassee*, Fla., 709

---

[5] Although the first comma may not be needed to make clear that "acting with a common intent" applies at least to the "three or more persons," ECF 98 at 7, that does not make the inverse true, contrary to Defendant Williams's interpretation—it does not mean the presence of the comma makes "acting with common intent" reach back to the "person." As noted above, "three or more persons" and "person" are not in a parallel structure and cannot, with the statute as currently written, be modified by a single modifier. And while Governor DeSantis's interpretation does not depend on the comma—he says the "person" shares a "common intent" not because of the commas but because the "person" is part of the "assembly," *see* ECF 99 at 13—there is no textual basis for this assertion. The person participates in the "disturbance" (whatever that is interpreted to mean), not the assembly. The "assembly" "involv[es]" other individuals but is not fully constituted by them. *Accord infra* Section II.B.3.b.

F. Supp. 2d 1244, 1250 (N.D. Fla. 2010) ("Courts should not rewrite a law to conform it to constitutional requirements, for doing so would constitute a serious invasion of the legislative domain and sharply diminish Congress's incentive to draft a narrowly tailored law in the first place.")).

The Governor further contends that a person must intend to commit violence under Section 15 regardless of what "common intent" modifies because it logically follows that a person willfully participating in a group that acts with a common intent will share that intent. ECF 99 at 13. But this again assumes the violent public disturbance is limited only to the assembly of three or more persons engaged in violence. As discussed earlier, because Section 15 does not limit who can be included as a "willful participant" in a "violent public disturbance," the danger exists that if a person "willfully participates" in a peaceful demonstration, any amount of actual or imminent violence will authorize police to label the entire event a "violent public disturbance" and arrest that person.

"Common intent to assist each other in violent disorderly conduct" is most naturally understood as only modifying the "assembly of three or more persons." Section 15 is therefore overbroad and should be enjoined.

### c.   *Ferguson* **is inapposite here.**

The Governor argues Section 15's intent requirement prevents overbroad application, relying on *Ferguson v. Estelle*, 718 F.2d 730 (5th Cir. 1983). But

*Ferguson* is inapposite. First, unlike Section 15, *Ferguson*'s "riot" definition did not explicitly create a "person" outside the assembly who could also be subject to liability. *See id.* at 732 (limiting "riot" to an "assemblage of seven or more persons"). Second, whereas the intent requirement in *Ferguson* applied to all relevant parties identified in the statute, here, "common intent" is most naturally understood to only apply to the "assembly." Third, in *Ferguson*, it was a defense to prosecution that after an assembly member manifested intent to engage in riotous conduct, they later retired from the assembly. *Id.* Here, Section 15 provides no such narrowing language and thus authorizes police to arrest as many people as they desire when a limited few engage in violence.

> ### d.   The proscription of First Amendment freedoms is not severable from the remainder of Section 15.

The Governor further argues this Court should strike the unconstitutional language from the "riot" definition if necessary to comport with the common law definition. As discussed in Plaintiffs' opening brief, saving the "riot" definition would require rewriting it, in contravention of Florida law. ECF 65 at 32. Accordingly, severability is not possible. However, as stated in section I.A. above, should this Court find, notwithstanding the plain language, broader context, and legislative history of Section 15, that the legislature intended Section 15 to codify the common law "riot" definition, Plaintiffs would welcome an order from the

Court that expressly finds that broader interpretations of the statute, including Plaintiffs' plausible interpretation, are unconstitutional.

### C. Plaintiffs have and will continue to suffer irreparable harm absent injunctive relief.

The Governor contends that Plaintiffs have offered no evidence that law enforcement plan to enforce Section 15 against them in a way that violates their constitutional rights. ECF 99 at 26. Yet irreparable harm arises not only from application, but also from the chilling effect caused by the credible threat of enforcement of a vague and overbroad law. As the Supreme Court explained in *NAACP v. Button*, "[t]he objectionable quality of vagueness and overbreadth [is] the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application." 371 U.S. 415, 432–33 (1963). Indeed, "[t]he threat of sanctions may deter their exercise almost as potently as the actual application of sanctions." *Id.*

The Governor's suggestion that Plaintiffs have not suffered irreparable harm because of a handful of events held earlier this year, ECF 99 at 26–27, does not warrant this Court's serious consideration. Plaintiffs' motion and declarations make clear that Plaintiffs' fundamental rights have been chilled. *See* ECF 65 at 11–15 and exhibits 1–7 (discussing the cancellation, modification or postponement of events, the complete termination of certain Plaintiffs' direct-action operations, and the significant decline in member attendance at events due to reported self-

censorship). This loss of First Amendment freedoms "unquestionably constitutes irreparable injury." *KH Outdoor, LLC*, 458 F.3d at 1271–72. The Governor's effort to undermine that by pointing to a few past events (including of non-party "other related groups" whose activities are entirely irrelevant to this motion) does not address the actual chilling effect on Plaintiffs.

### D. The balance of the equities and public interest favor granting Plaintiffs' requested relief.

Plaintiffs have demonstrated that an injunction would serve the public interest, *see* ECF No. 65 at 35, and that Defendants will not be harmed by entry of an injunction, *id.* That is especially true where the Defendants have argued that the law being challenged made no change to the status quo. That an injunction may not bind nonparties to this suit who have enforcement authority under HB1 does not undermine Plaintiffs' showing. Plaintiffs are based in the Defendant-Sheriffs' jurisdictions, *see* ECF 33 at n.13, and an injunction will eliminate the fear of Plaintiffs' members in those jurisdictions that they will be arrested and held overnight without bail by Defendant Sheriffs and their deputies. *See also id.* at 41– 42 ("Plaintiffs' requested relief . . . will directly redress Plaintiffs' alleged injuries flowing from their reasonable fear that the challenged provisions will be enforced against their members by Defendant Sheriffs."). Preliminary relief will further promote First Amendment values by preventing Governor DeSantis from enforcing Section 15 statewide. *Cf.* ECF 90 at 40–41 ("Article III . . . . does not demand that

the redress sought by a plaintiff be complete." (quoting *Moody v. Holman*, 887 F.3d 1281, 1287 (11th Cir. 2018))).

Conversely, in the absence of injunctive relief, Plaintiffs' speech and expression will continue to be chilled. Accordingly, this Court should grant Plaintiffs' requested relief.

### E.   The Court has already ruled that Sheriff Tony is an arm of the state and therefore a proper defendant with respect to Section 15.

Finally, Sheriff Tony's argues that he is not an arm of the state and therefore Plaintiffs are unlikely to succeed on the merits against him.[6] This Court has already rejected that argument with respect to Section 15. ECF 90 (Order on Mots. to Dismiss) at 43–54. Effectively, Sheriff Tony is seeking reconsideration of the Court's ruling, but he identifies no reason why he meets the rigorous standard for this "extraordinary remedy." *Pensacola Firefighters' Relief Pension Fund Bd. of Trustees v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 591–92 (N.D. Fla. 2010).

Reconsideration is warranted only based on "(1) an intervening change in controlling law; (2) the availability of new evidence; [or] (3) the need to correct clear error or prevent manifest injustice." *Id.*; *accord, e.g.*, *Ford v. Gov't Emps. Ins. Co.*, No. 1:14CV180-MW/GRJ, 2015 WL 11109374, at *1 (N.D. Fla. June 11,

---

[6] Sheriff Williams also maintains his argument that he is not an arm of the state, but he indicates that the Court need not reach that issue here. ECF 98 at 3–4.

2015). Sheriff Tony does not attempt to meet that standard, nor could he. The Court's ruling devoted over eleven pages to analyzing whether Sheriff Defendants are arms of the state for purposes of Section 15, applying each of the relevant factors (identified in *Manders v. Lee*, 338 F.3d 1304, 1309 (11th Cir. 2003)) before concluding that, on balance, the Defendant Sheriffs "are properly considered arms of the state for purposes of Eleventh Amendment immunity and proceeding under *Ex Parte Young*." ECF 90 at 54.

That the Court described its determination as a "close call," as Sheriff Tony emphasizes, does not alter the salient points that the Court already made the determination and there is no basis for overturning it. Sheriff Tony has identified no intervening change in controlling law, new evidence, clear error, or manifest injustice bearing on the Court's conclusion. Because Sheriff Tony's only argument against Plaintiffs' motion has already been decided against him and there is no basis for reconsideration, this Court should issue Plaintiffs' requested relief.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)

This reply contains 4,480 words, an expansion to which Defendants do not object.

Dated: August 26, 2021

Respectfully submitted,

*/s/ Max Gaston*

**NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.**

*/s/ Rachel M. Kleinman*
Rachel M. Kleinman*
rkleinman@naacpldf.org
Morenike Fajana*
mfajana@naacpldf.org
40 Rector Street, 5th Floor
New York, NY 10006
Telephone: (212) 965-3709
Facsimile: (212) 226-7592
-and-
Georgina C. Yeomans*
gyeomans@naacpldf.org
Jason P. Bailey*
jbailey@naacpldf.org
700 14th Street NW, Suite 600
Washington, DC 20005
Telephone: (202) 216-2721
Facsimile: (202) 682-1312

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF FLORIDA, INC.**

*/s/ Max H. Gaston*
Max H. Gaston*
mgaston@aclufl.org
Daniel B. Tilley
Florida Bar No. 102882
dtilley@aclufl.org
Nicholas Warren
Florida Bar No. 1019018
nwarren@aclufl.org

**COMMUNITY JUSTICE PROJECT, INC.**

*/s/ Alana Greer*
Alana Greer
Florida Bar No. 92423
alana@communityjusticeproject.com
Berbeth Foster
Florida Bar No. 83375
berbeth@communityjusticeproject.com
Denise Ghartey
Florida Bar No. 1019211
denise@communityjusticeproject.com
Miriam Haskell
Florida Bar No. 069033
miriam@communityjusticeproject.com
3000 Biscayne Blvd., Suite 106
Miami, Florida 33137
Telephone: (305) 907-7697

**AKIN GUMP STRAUSS HAUER & FELD LLP**

*/s/ Joseph L. Sorkin*
Joseph L. Sorkin*
jsorkin@akingump.com
Anne M. Evans**
aevans@akingump.com
Erica E. Holland*
eholland@akingump.com
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000

20

4343 West Flagler Street, Suite 400
Miami, Florida 33134
Telephone: (786) 363-2700
Telephone: (786) 363-2707

Facsimile: (212) 872-1002
-and-
Steven H. Schulman*
sschulman@akingump.com
James E. Tysse*
jtysse@akingump.com
Miranda Alyssa Dore*
mdore@akingump.com
Caroline L. Wolverton*
cwolverton@akingump.com
Robert S. Strauss Tower
2001 K Street N.W.
Washington, D.C. 20006
Telephone: (202) 887-4000
Facsimile: (202) 887-4288
-and-
Nicholas E. Petree*
npetree@akingump.com
1111 Louisiana Street, 44th Floor
Houston, Texas 77002-5200
Telephone: (713) 220-5800
Facsimile: (713) 236-0822

*Admitted pro hac vice
** Pro Hac Vice Applications to
be filed

Counsel for Plaintiffs