[PUBLISH]

# In the United States Court of Appeals For the Eleventh Circuit

_____

No. 21-13489

_____

DREAM DEFENDERS,
BLACK COLLECTIVE INC.,
CHAINLESS CHANGE INC.,
BLACK LIVES MATTER ALLIANCE BROWARD,
FLORIDA STATE CONFERENCE OF THE NAACP, et al.,

                                                   Plaintiffs-Appellees,

*versus*

GOVERNOR OF THE STATE OF FLORIDA,
SHERIFF OF JACKSONVILLE/DUVAL COUNTY FLORIDA,

                                                   Defendants-Appellants,

| 2 | Opinion of the Court | 21-13489 |
|---|---|---|

ATTORNEY GENERAL, STATE OF FLORIDA, et al.,

                                                    Defendants.

_____

Appeals from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cv-00191-MW-MAF

_____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

JILL PRYOR, Circuit Judge:

    This appeal returns to us after we certified a question to the Supreme Court of Florida asking it to provide an authoritative interpretation of Florida's amended criminal riot statute, Fla. Stat. § 870.01(2) (2021). We certified the question to assist our review of the district court's entry of a preliminary injunction enjoining the defendants from enforcing the statute. The proper interpretation of the statute is essential to determining whether the district court abused its discretion in granting the preliminary injunction based on the plaintiffs' constitutional claims that the statute is so ambiguous in defining the conduct it criminalizes as to be impermissibly vague and that it is overbroad in criminalizing constitutionally protected First Amendment activity. *See Dream Defs. v. Governor of Fla.* ("*Dream Defs. I*"), 57 F.4th 879, 894 (11th Cir. 2023). If the amended criminal riot statute is not impermissibly vague and does not criminalize peaceful protest activity, then the plaintiffs cannot show a

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 3 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 3 of 17

21-13489                Opinion of the Court                3

likelihood of success on the merits of their claims under the four-part standard we apply in reviewing preliminary injunctions. *See Yorktown Sys. Grp. Inc. v. Threat Tec LLC*, 108 F.4th 1287, 1293 (11th Cir. 2024).

In response to our certified question, the Florida Supreme Court answered, "the statute at issue here is not ambiguous." *DeSantis v. Dream Defs.*, 389 So. 3d 413, 426 (Fla. 2024). The Court concluded that "[a] peaceful protestor, under the most natural reading of the statute, is no rioter." *Id.* at 425. It held that the statute does not apply to "a person who is present at a violent protest, but neither engages in, nor intends to assist others in engaging in, violent and disorderly conduct." *Id.* at 416.

With the benefit of the Florida Supreme Court's answer to our certified question, we hold that the plaintiffs have failed to demonstrate a substantial likelihood of success on the merits of their vagueness and overbreadth challenges to the amended riot statute. The district court erred in concluding otherwise, and thus it abused its discretion by granting the preliminary injunction. We reverse the preliminary-injunction order and remand for further proceedings.

**I.    BACKGROUND**

Case 4:21-cv-00191-MW-MAF    Document 198    Filed 10/07/24    Page 4 of 19
USCA11 Case: 21-13489    Document: 93-1    Date Filed: 10/07/2024    Page: 4 of 17

4                          Opinion of the Court                      21-13489

We described the relevant facts of this appeal in *Dream Defenders I*, 57 F.4th at 883–86, but we briefly recount them here.

Following widespread protests opposing police violence against people of color in the summer of 2020, the Florida Legislature passed the Combatting Violence, Disorder, and Looting, and Law Enforcement Protection Act, also known as House Bill 1, 2021 Fla. Leg. Sess. Laws Serv. ch. 2021-6, and codified at Fla. Stat. § 870.01(2). House Bill 1, in part, amended Florida's criminal riot statute and redefined the crime of "riot." House Bill 1 provides:

> A person commits a riot if he or she willfully participates in a violent public disturbance involving an assembly of three or more persons, acting with a common intent to assist each other in violent and disorderly conduct, resulting in:
>
> (a) Injury to another person;
>
> (b) Damage to property; or
>
> (c) Imminent danger of injury to another person or damage to property.

Fla. Stat. § 870.01(2).

In response to House Bill 1's passage, the plaintiffs, Dream Defenders and other civil rights organizations that organize and attend racial justice protests, filed a complaint against defendants Governor Ron DeSantis and Mike Williams, the Sheriff of Jacksonville, among others, challenging the constitutionality of the amended criminal riot statute on First Amendment grounds. In their complaint, the plaintiffs alleged that the statute chilled their

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 5 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 5 of 17

21-13489                Opinion of the Court                         5

First Amendment rights because the statute's vagueness and overbreadth required them to self-censor to avoid prosecution under it. Not long after, the plaintiffs moved for a preliminary injunction to enjoin Governor DeSantis and Sheriff Williams from enforcing the statute. To merit the district court's entry of a preliminary injunction, the plaintiffs were required to show that: (1) they have "a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest." *Yorktown Sys. Grp. Inc.*, 108 F.4th at 1293 (internal quotation marks omitted). The district court granted the preliminary injunction, ruling that the plaintiffs had established associational standing and satisfied the preliminary-injunction standard.

In its order granting the preliminary injunction, the district court concluded that the statute is open to "multiple reasonable constructions," making it unconstitutionally vague because "an individual of ordinary intelligence could read [it] and not be sure of its real-world consequence." Doc. 137 at 71, 75.[1] And the district court concluded that the statute is overbroad because it "consumes vast swaths of core First Amendment speech." *Id.* at 76. The court reasoned that it "can plausibly be read to criminalize continuing to protest after violence occurs, even if the protestors are not involved in, and do not support, the violence" and engaging in other

---

[1] "Doc." numbers refer to the district court's docket entries.

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 6 of 19
USCA11 Case: 21-13489    Document: 93-1    Date Filed: 10/07/2024    Page: 6 of 17

6                         Opinion of the Court                    21-13489

"expressive activity, like remaining at the scene of a protest turned violent to film the police reaction." *Id.* On appeal from the preliminary-injunction order, Governor DeSantis and Sheriff Williams argued that the statute does not prohibit peaceful protest activity and is constitutionally sound. Thus, they argued, the plaintiffs could not demonstrate the first factor of the test to establish entitlement to a preliminary injunction, a substantial likelihood of success on the merits.

The plaintiffs responded that their constitutional claims were likely to succeed because the statute leaves unclear "what it means to 'participate' in a violent public disturbance," what constitutes a "violent public disturbance," and whether peacefully protesting in proximity to violent protestors is prohibited. Appellees' Br. at 42–43.

In *Dream Defenders I*, we addressed whether the plaintiffs had established that they were likely to succeed on their constitutional challenges to the amended riot statute. We concluded that our analysis of the statute's specificity and breadth turned on a novel issue of state law—the meaning of "riot" under the statute. *Dream Defs. I*, 57 F.4th at 890–91. We therefore decided to certify a question to the Florida Supreme Court addressing the riot statute's proper interpretation. We asked:

> What meaning is to be given to the provision of Florida Stat. § 870.01(2) making it unlawful to "willfully participate in a violent public disturbance involving an assembly of three or more persons, acting with a common intent to assist each other in violent and

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 7 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 7 of 17

21-13489                Opinion of the Court                7

>  disorderly conduct, resulting in . . . injury to another person; . . . damage to property; . . . or imminent danger of injury to another person or damage to property"?

*Id.* at 894 (alterations adopted). The Florida Supreme Court answered. With the benefit of the Court's responses, and with great appreciation for its assistance, we now consider the likelihood of success of the plaintiffs' vagueness and overbreadth challenges to the amended riot statute.

## II. STANDARD OF REVIEW

"We review the grant of a preliminary injunction for abuse of discretion, reviewing any underlying legal conclusions *de novo* and any findings of fact for clear error." *Gonzalez v. Governor of Ga.*, 978 F.3d 1266, 1270 (11th Cir. 2020). "A district court abuses its discretion when it misapplies the law in reaching its decision or bases its decision on findings of fact that are clearly erroneous." *United States v. Scrushy*, 721 F.3d 1288, 1303 (11th Cir. 2013) (internal quotation marks omitted).

## III. DISCUSSION

We begin by reviewing the Florida Supreme Court's response to our certified question. Then we turn our focus to the likelihood of success of the plaintiffs' vagueness and overbreadth claims.[2]

---

[2] The first factor of the preliminary-injunction standard, "a substantial likelihood of success on the merits," is the only one at issue in this appeal. *Yorktown Sys. Grp. Inc*, 108 F.4th at 1293 (internal quotation marks omitted). This factor

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 8 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 8 of 17

8                    Opinion of the Court                    21-13489

Our inquiry to the Florida Supreme Court was prompted because the constitutional questions of vagueness and overbreadth "turn[] on the proper interpretation of the new definition of 'riot' under Florida law." *Dream Defs. I*, 57 F.4th at 884; *see also Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 494 n.5 (1982) (explaining that when a federal court evaluates a state law for facial vagueness or overbreadth, the federal court "must, of course, consider any limiting construction that a state court . . . has proffered"). If the amended riot statute, properly interpreted, failed to provide fair warning of what the law requires and left "its prohibitions . . . not clearly defined," it is void for vagueness. *Dream Defs. I*, 57 F.4th at 890 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). And if the statute, properly interpreted, "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep," it is overly broad. *Id.* (quoting *Virginia v. Hicks*, 539 U.S. 113, 118–19 (2003)).

In addressing these constitutional questions, we shared the plaintiffs' concern that the statute left unclear what degree of involvement in a violent public protest would be required for criminal liability under the statute. *Id.* at 891. Like the plaintiffs, we questioned what constituted a "violent public disturbance" under the statute. *Id.* We also wondered whether the statute's mens rea element required a person to "share the common intent to assist in violent and disorderly conduct." *Id.* at 892. And we could not rule

---

is "generally the most important" of the four preliminary-injunction factors. *Gonzalez*, 978 F.3d at 1271 n.12 (internal quotation marks omitted).

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 9 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 9 of 17

21-13489                Opinion of the Court                9

out that a peaceful protestor's attendance at a violent public protest might come within the statute's purview. *Id.*

To address these concerns and to guide the Florida Supreme Court's analysis of our certified question, we asked the Court to answer four sub-questions relating to (1) the meaning of a "violent public disturbance," (2) the conduct required for a person to "willfully participate in a violent public disturbance," (3) the State's burden of proof as to a defendant's intent under the statute, and (4) the statute's applicability to a person who peacefully attends a protest that turns violent. *Id.* at 894–95. Our analysis of whether the plaintiffs have shown a likelihood of success on their vagueness and overbreadth claims turns on the Florida Supreme Court's answers to these questions.

With this context in mind, we examine the Florida Supreme Court's answers to our certified question and sub-questions.

### A. The Florida Supreme Court's Answers

We summarize the Florida Supreme Court's answer to each sub-question below.[3]

The Court first addressed our sub-question about the meaning of a "violent public disturbance," which read:

---

[3] The Florida Supreme Court answered three of our four sub-questions after concluding that one was beyond the Court's jurisdiction to consider. *DeSantis*, 389 So. 3d at 418 n.7. Therefore, the inquiries we labeled sub-questions 3 and 4 in *Dream Defenders I* are now labeled sub-questions 2 and 3, respectively.

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 10 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 10 of 17

10                        Opinion of the Court                    21-13489

> 1. What qualifies as a "violent public disturbance"? Is it something more than "three or more persons acting with a common intent to assist each other in violent and disorderly conduct resulting in injury to another person, damage to property, or imminent danger of injury to another person or damage to property"?

*Dream Defs. I*, 57 F.4th at 894 (alteration adopted). After applying canons of statutory interpretation and reviewing Florida common law, the Florida Supreme Court concluded that a "violent public disturbance" is:

> a tumultuous disturbance of the peace that is carried out in a violent and turbulent manner involving an assembly of three or more persons, acting with a common intent to assist each other in violent and disorderly conduct and results in injury to another person, damage to property, or imminent danger of either.

*DeSantis*, 389 So. 3d at 423 (alterations adopted) (internal quotation marks and citations omitted).

The next sub-question the Court answered inquired about the riot statute's mens rea requirement:

> 2. To obtain a conviction, does the State have to prove beyond a reasonable doubt that the defendant intended to engage or assist two or more other persons in violent and disorderly conduct? If not, what must the State prove regarding intent?

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 11 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 11 of 17

21-13489                Opinion of the Court                11

*Dream Defs. I*, 57 F.4th at 894. Based on a plain reading of the statute, the Court answered that "to obtain a conviction under section 870.01(2), the State must prove a defendant acted with intent to assist others in violent and disorderly conduct." *DeSantis*, 389 So. 3d at 424. In reaching this conclusion, the Court reasoned that "the common-intent phrase is best understood to modify not only 'an assembly of three or more persons,' but also 'a person' who 'willfully participates in a violent public disturbance.'" *Id.* (quoting Fla. Stat. § 870.01(2)). In other words, "a person can commit an offense under the statute only by acting with the specified intent: willfulness." *Id.*

The Court concluded by addressing our sub-question concerning circumstances where peaceful protestors attend a violent protest but do not engage in violence themselves. This sub-question asked:

> 3. May a person be guilty of the crime of riot if the person attends a protest and the protest comes to involve a violent public disturbance in which three or more people acting with a common intent to assist each other engage in violent and disorderly conduct and the violent disturbance results in injuries to another person, damage to property, or imminent danger of injury to another or damage to property, but the person did not engage in, or intend to assist others in engaging in, violent and disorderly conduct?

*Dream Defs. I*, 57 F.4th at 894–95. The Court answered "no." *DeSantis*, 389 So. 3d at 425. Extrapolating from its answers to our other

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 12 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 12 of 17

12                      Opinion of the Court                    21-13489

sub-questions, the Court explained that "to be guilty of the crime of riot, one must engage in, or at least intend to assist others in engaging in, violent disorderly conduct." *Id.* (internal quotation marks omitted). Thus, merely attending a violent protest, without more, falls outside the statute's reach.

### B. The Vagueness and Overbreadth Challenges

With the benefit of the Florida Supreme Court's response to our certified question and sub-questions, we turn back to whether the district court erred when it ruled that the plaintiffs demonstrated a substantial likelihood of success on the merits of their vagueness and overbreadth challenges to Florida's amended criminal riot statute.

We first address the plaintiffs' vagueness challenge. A law is unconstitutionally vague "if its prohibitions are not clearly defined." *Grayned*, 408 U.S. at 108. An "essential of due process," this doctrine "guarantees that ordinary people have fair notice of the conduct a statute proscribes." *Sessions v. Dimaya*, 584 U.S. 148, 155–56 (2018) (internal quotation marks omitted). And the doctrine prevents laws from being enforced in an "arbitrary or discriminatory" manner. *Id.* at 156.

Vagueness is of greater concern with laws that carry criminal penalties, like the riot statute here. *See id.* ("[T]he Court has 'expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe.'" (quoting *Vill. of Hoffman Ests.*, 455 U.S. at 498–99)). And "[t]he First Amendment context amplifies [vagueness]

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 13 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 13 of 17

21-13489                Opinion of the Court                13

concerns because an unconstitutionally vague law can chill expressive conduct by causing citizens to 'steer far wider of the unlawful zone' to avoid the law's unclear boundaries." *Keister v. Bell*, 29 F.4th 1239, 1258–59 (11th Cir. 2022) (quoting *Grayned*, 408 U.S. at 109); *see also Smith v. Groguen*, 415 U.S. 566, 573 (1974) (explaining that when "a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in other contexts").

Before *Dream Defenders I*, the plaintiffs argued that the statute was vague because it left unclear what it means to "participate in a violent public disturbance" and what constitutes a "violent public protest." 57 F.4th at 890 (internal quotation marks omitted). As a result, the plaintiffs argued, it is "hopelessly unclear whether the statute criminalizes continuing to protest peacefully while others commit violence." *Id.* (internal quotation marks omitted). To illustrate this point, the plaintiffs expressed fear that peaceful protestors could be prosecuted under the statute "if they remained on the scene after violence erupted and continued to protest, assisted those who were injured, or filmed the events." *Id.* at 892. They argued that ordinary people engaging in these hypothetical scenarios lack "notice of what conduct will run afoul of the new law." Appellees' Br. at 4. In the plaintiffs' view, the statute's vagueness left unclear if all, some, or none of these scenarios constituted rioting under the statute.

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 14 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 14 of 17

14                       Opinion of the Court                    21-13489

The Florida Supreme Court has now confirmed that the riot statute does not attach to peaceful conduct. *DeSantis*, 389 So. 3d at 425. A protestor cannot be prosecuted under the riot statute if she is merely found within or alongside a group that turns violent or engages in violence. Instead, the statute requires that the protestor act with the intent to assist others' violent conduct. *Id.* Mere attendance at a violent protest is not enough. At the very least, a person must intend to assist others' violence within a violent public disturbance. *Id.* In the Court's words, "a person cannot 'willfully participate' in a 'violent public disturbance' without 'acting with a common intent to assist others in violent and disorderly conduct.'" *Id.* (alteration adopted) (quoting Fla. Stat. § 870.01(2)). Put differently, "to be guilty of the crime of riot, one must engage in, or at least intend to assist others in engaging in, violent and disorderly conduct." *Id.* (internal quotation marks omitted). And this interpretation is authoritative "because the only authoritative voice on Florida law is the Florida Supreme Court." *In re NRP Lease Holdings, LLC*, 20 F.4th 746, 750 (11th Cir. 2021) (alterations adopted) (internal quotation marks omitted).

This interpretation resolves the plaintiffs' fear that "the statute criminalizes continuing to protest peacefully." *Dream Defs. I*, 57 F.4th at 890 (internal quotation marks omitted). As the Supreme Court of Florida has explained, for a protestor to be criminally liable under the statute, the state must prove that the protestor acted with violence or intended to assist another's violence. Peaceful protest is categorically outside the statute's bounds.

Case 4:21-cv-00191-MW-MAF    Document 198    Filed 10/07/24    Page 15 of 19
USCA11 Case: 21-13489    Document: 93-1    Date Filed: 10/07/2024    Page: 15 of 17

21-13489                Opinion of the Court                15

With the statute's bounds now clearly defined, we can conclude that "ordinary people have fair notice of the conduct [the riot] statute proscribes." *Dimaya*, 584 U.S. at 156 (internal quotation marks omitted). Considering the Florida Supreme Court's authoritative guidance on the statute's meaning, we hold that the district court erred when it determined that the plaintiffs had a substantial likelihood of success on their claim that the riot statute is unconstitutionally vague.

Like the vagueness challenge, the plaintiffs' overbreadth claim depends on the scope of activity prohibited by the riot statute. As we noted in *Dream Defenders I*, a statute is overly broad if it "punishes a substantial amount of protected free speech, judged in relation to the statute's plainly legitimate sweep." 57 F.4th at 890 (quoting *Hicks*, 539 U.S. at 118–19). And we apply the overbreadth doctrine "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973).

Focusing on the potential swath of constitutionally protected conduct outlawed by the Florida riot statute, the plaintiffs argue on appeal that it is overbroad because "[t]here is no reasonable and readily apparent reading that excludes those who merely attend protests involving violence—even if the individual neither participates nor intends to participate in the violence." Appellees' Br. at 58 (alteration adopted) (internal quotation marks omitted). For example, the plaintiffs contend that the statute "appears to criminalize . . . protected expressive activity, such as willfully participating in a public disturbance by photographing or videotaping

Case 4:21-cv-00191-MW-MAF    Document 198    Filed 10/07/24    Page 16 of 19
USCA11 Case: 21-13489    Document: 93-1    Date Filed: 10/07/2024    Page: 16 of 17

16 Opinion of the Court 21-13489

police conduct after violence erupts." *Id.* at 58–59 (alterations adopted) (internal quotation marks omitted). And, in the plaintiffs' view, the statute permits outside "agitators to criminalize Plaintiffs' protected activities" and creates "guilt by association" because the statute does not require "the accused to share in the violent intent of others." *Id.* at 61.

With the benefit of the Florida Supreme Court's definitive interpretation of the riot statute, we now know that this is not the case. The touchstone of liability under the riot statute is violence. This violence may not be incidental; it must be intentional. And "[t]he First Amendment does not protect violence." *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982). Thus, the statute does not broadly prohibit constitutionally protected speech. Nor does it reach the plaintiffs' hypothetical photographing or videotaping of police officers at a violent protest, so long as the photography or videography is not intended to assist others in carrying out violence. The plaintiffs' fear of guilt by association under the statute is also unfounded. If a protestor lacks the "intent to assist others in violent and disorderly conduct," the spontaneous violence of unrelated individuals is not enough to trigger liability under the statute. *DeSantis*, 389 So. 3d at 424. Therefore, the district court erred when it found the plaintiffs had a substantial likelihood of success on their claim that the riot statute is overbroad.

### IV. CONCLUSION

Case 4:21-cv-00191-MW-MAF   Document 198   Filed 10/07/24   Page 17 of 19
USCA11 Case: 21-13489   Document: 93-1   Date Filed: 10/07/2024   Page: 17 of 17

21-13489               Opinion of the Court                17

We thank the Supreme Court of Florida for its guidance. The district court's order granting a preliminary injunction is reversed and the case is remanded for further proceedings.

**REVERSED AND REMANDED**.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 07, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-13489-JJ
Case Style: Dream Defenders, et al v. Governor of the State of Florida, et al
District Court Docket No: 4:21-cv-00191-MW-MAF

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellee(s) / Respondent(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion